In re Petition of Paul **DOLAN** for Review of the State Board of Law Examiners' Decision.

In re Application of Milton Welsh **SCHOBER** for Admission to Practice Law in the State of Minnesota.

Nos. C3–88–2245, CX–89–87.

Supreme Court of Minnesota.

Sept. 15, 1989.

Thomas K. Berg, Thomas M. Sipkins, Bryan L. Crawford, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for petitioner Milton W. Schober.

Paul Dolan, Atty., Inver Grove Heights, in pro per.

Margaret Fuller Courneille, MN Bd. of Law Examiners, St. Paul, and Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

WAHL, Justice.

The standard for admission to the bar of this state has long been the passage of a written bar examination and graduation with a J.D. or L.L.B. degree from a law school which is approved, provisionally or fully, by the American Bar Association.[1] Rule II(A)(3), Rules of the Supreme Court and State Board of Law Examiners for Admission to the Bar. We examined in depth the legal and educational basis for

---

1. From 1943—1961 an exception to the graduation from an approved law school requirement was made for the Minneapolis College of Law so long as that school only admitted students qualified as required by the Rules for Admission to the Bar. In 1961 this exception was dropped.

The American Bar Association, through the council of its Section on Legal Education and Admissions to the Bar, is recognized by the U.S. Department of Education as the official accrediting agency for professional schools of law in the United States.

the graduation from an approved law school requirement in *In re Hansen,* 275 N.W.2d 790 (Minn.1978). In order to insure a competent bar, we acknowledged our primary reliance on the educational process to determine whether an attorney should be admitted to practice, and our use of the bar examination "only to weed out the small number who are unfit to practice law despite their exposure to educational environments of high quality." *Id.* at 798. We found no special circumstances which mandated a waiver of the graduation from an ABA approved law school requirement in Hansen's case and denied his application to sit for the bar examination.

In the two consolidated cases now before us, petitioners Milton Welsh Schober and Paul Dolan seek admission under Rule IV A, Rules for Admission to the Bar, which permits admission without examination of attorneys licensed in other jurisdictions who have practiced law for more than five years. Neither petitioner is a graduate of an ABA approved law school. The Board of Law Examiners is authorized, under Rule IB(6), to grant waivers of strict compliance with the Rules in cases of hardship or other compelling reasons. Schober requested a hearing and a waiver from the Board and was granted both. Dolan requested neither. The question to be decided is whether either petitioner has demonstrated sufficient grounds for waiver of Rule IIA(3), graduation from an approved law school. We affirm the Board of Law Examiner's recommendation to admit Milton Schober, and we remand the application of Paul Dolan to the Board of Law Examiners for a hearing to develop a factual record if he wishes to pursue the matter further. We retain jurisdiction to review the Board's recommendation in Dolan's case.

*Milton Schober*

Petitioner Schober, a certified public accountant, graduated from a four-year law program at Centenary College in Louisiana in 1955. Centenary College was formed after World War II, and was closed in 1964.

During that time it operated as a proprietary (for profit) school and never sought ABA accreditation since the ABA did not review proprietary schools prior to 1977. As we recognized in *Hansen,* this policy was based on the ABA's considered opinion that operating a school for profit would lead to skimping on services to the law students and would adversely affect the caliber of education. In 1977, the ABA resolved to accept applications from proprietary schools to test the correctness of its assumption, but by that time Centenary College had closed.[2]

Schober passed the Louisiana Bar in 1955, was admitted to the bar of the Supreme Court of the United States in 1961 and the bars of the District Court and the Court of Appeals for the District of Columbia in 1972. He has also been admitted to practice before the Courts of Appeal for the Fifth, Ninth and Eleventh Circuits. Schober was in private practice in Louisiana until 1968, served in Washington, D.C. as a division Assistant Director for the Board of Governors of the Federal Reserve System, 1968–1970, as general counsel to the National Commission on Consumer Finance, 1970–1972, and resumed private practice from 1973–1986. In 1986, Schober became vice president of ITT Consumer Financial Corporation, and was promoted to Senior Vice President and Secretary in 1987. He has authored numerous legal articles, has participated in national drafting committees for Uniform Laws and state and federal statutes and regulations in the 33 years since his admission to the bar, and is a recognized expert in the field of regulated lending.

Since joining ITT in December 1986, Schober has resided in Minnesota. He requests admission to the Minnesota bar so he may assume the duties of general counsel for ITT, supervising 11 attorneys and conducting all phases of corporate legal work.

Schober filed an application for admission to the Minnesota bar on June 8, 1988, which was denied because he had not grad-

---

**2.** The ABA currently accepts applications for accreditation of proprietary schools but to date none has otherwise established compliance with the standards for accreditation of law schools.

uated from an ABA accredited law school. He appealed that determination to the Board. The Board held an informal hearing on August 25, 1988, at which Schober's attorney appeared and argued for waiver of the education requirement. On October 7, 1988, the Board formally reviewed Schober's application, his curriculum vitae, information obtained from Centenary College and the ABA, as well as a letter brief submitted by his attorney. The Board recommended waiver. Concluding that Schober had shown compelling reasons for waiver of Rule II(A)(4) and had shown that hardship would result from requiring him to attend law school again, the Board listed five grounds for its decision: Centenary was a proprietary law school when Schober graduated from it and not eligible for ABA accreditation until 1977, by which time the school had closed; Schober had practiced law for 33 years, was admitted to the bars in a number of other jurisdictions and had apparent expertise in his field of practice.

*Paul Dolan*

Petitioner Dolan graduated from the University of Minnesota in August, 1971, then attended the University of West Los Angeles School of Law, which is not accredited by the American Bar Association. Dolan passed the California State bar examination on his fourth attempt, February 1977, and was also successful on the Hawaii examination in July, 1984. Dolan has been admitted to the bars of California, Hawaii, Hawaii–Federal Court and the U.S. Supreme Court.

Dolan worked from 1979–1984 as a Public Defender in Los Angeles County but left that position because the job became unfulfilling following an auto accident in January 1984. After the auto accident, he was treated for post traumatic stress syndrome, practiced privately in Hawaii for two years, then returned to California, practicing privately from 1986 until 1988. Dolan volunteered as a municipal court judge pro tem from April 1987 to 1988.

Dolan filed an application for admission to the Minnesota Bar without examination by years of practice. His first application was returned to him unprocessed, since he failed to include two letters of recommendation as required by Rule 100(A)(2) and also failed to include a certified check or money order for $500 as required by Rule 105(A). Dolan resubmitted a complete application July 25, 1988.

In applying for admission based on years of experience, Dolan claims he read only Rule IV of the Rules of the Supreme Court and did not realize Minnesota required graduation from an ABA-accredited law school in addition to having practiced five of the previous seven years as an attorney. The Board of Law Examiners informed Dolan, by letter dated August 31, 1988, that his application was denied on the basis that he did not receive his degree from an ABA accredited law school. Not having sent the Board a change of address, Dolan did not receive the letter until he personally obtained a copy from the Board on October 11, 1988, after having moved to Minnesota. On October 27, 1988, Dolan then filed a petition with this court for review of the decision of the State Board of Law Examiners without requesting a waiver or a hearing from the Board. We stayed further action and consolidated these two cases for consideration.

■ Graduation from an ABA approved law school and passage of the bar examination will continue to be the two-pronged standard by which this court judges the competence of applicants for admission to the Minnesota bar. We recognize, however, that compelling circumstances may exist for which waiver of a strict application of educational requirements would be appropriate. We have addressed that possibility in two cases and in both cases have denied the waiver. *In re Busch*, 313 N.W.2d 419 (Minn.1981); *In re Hansen*, 275 N.W.2d 790 (Minn.1978). *Hansen* and *Busch* are of limited applicability here because they involved recent law school graduates seeking judicial recognition of the quality of their education and permission to take the bar examination. Nevertheless, they address the purposes behind the rules for admission and so deserve discussion.

Hansen attended ABA accredited Marquette University Law School for one

month before transferring to Western State. The Dean of Marquette Law School had advised against the transfer in part because of Western's lack of accreditation. Before Hansen's case was heard by this court, he passed the California bar and was admitted to practice there. Notwithstanding this fact, his request for a waiver was denied.

Hansen challenged the constitutionality of the accreditation rule on equal protection and due process grounds without success. He also argued the rule should be waived given the circumstances of his case. In the course of evaluating these arguments, this court reaffirmed the importance of a legal education to lawyer competence.

No consideration is more critical in evaluating the qualifications of an applicant for admission to the bar than the quality and calibre of his legal education. A good lawyer must possess a complete and workable legal education; developed through exposure to many branches of law, contacts and communication with competent and professional instructors, experience in legal research and writing, interaction with other students, and access to current and complete research materials.

275 N.W.2d at 794–95, quoting Rossiter v. Law Committee of the State Board of Law Examiners, Civil Action No. C–4767 (D.Colo.1975), at 12).

In declining to waive the requirement in Hansen's case, we again stressed the impossibility of a court's determining what experiences are necessary to create a well-rounded attorney and concluded that it made more sense to use the specialized services of the ABA. 275 N.W.2d at 796–97. The ABA had twice invited Western State to apply for provisional accreditation as a proprietary (for profit) school, and Western had declined, leaving the court with no way of knowing whether the school could have complied with the ABA standards.

*Busch* involved 20 graduates of Butler School of Law, which operated in Minnesota from 1975 to 1980, but failed to apply for ABA accreditation. This court denied the requested waiver, noting that the students had not been misled as to the accreditation status of the school, nor had they sought the advice of the Board of Law Examines before paying tuition. *Busch* was deemed to be controlled by *Hansen.* In the cases before us now we are asked to consider waiver in a context where neither prong of our standard will have been satisfied.

Several jurisdictions have refused outright to consider individual waivers of the accreditation requirement, citing the heavy administrative burden on the court. Thus, in *Eyerly v. Alaska Bar Ass'n*, 631 P.2d 480 (Alaska 1981), an applicant was denied admission to the Alaska bar after graduating from a non-ABA accredited law school in California, passing the California bar, and working for Alaska Legal Services. The Alaska Supreme Court recognized that an inflexible rule might be counter-productive in some cases, but considered the difficulty of any other approach to outweigh the drawbacks. *See also In re Adams,* 700 P.2d 194 (N.M.1985) (denied waiver to a practicing barrister/solicitor who had graduated from a Canadian law school four years earlier). *In re Tucker*, 381 So.2d 1203 (La.1980) reached the same result, although in a companion case, the Louisiana Supreme Court granted a waiver for a graduate of a foreign law school who had received a graduate law degree from an ABA accredited law school. *In re Faylona*, 381 So.2d 1203 (La.1980).

Though an inflexible rule might be easily administered, such rigidity would contradict the explicit language of Minnesota's Rule I, which grants the Board authority to waive strict compliance with the rules for admission in cases of hardship or for other compelling reasons, and this court's inherent authority to waive the educational requirements in an exceptional case. A decision to grant a waiver, however, will not be lightly made and must depend on, among other things, the demonstrated competence of the applicant in the years of practice following law school.

In Schober's case, the Board of Law Examiners has recommended waiver based on the unique combination of facts, including 33 years of legal practice after graduation from a law school that the ABA would not review because of its proprietary status. Schober has demonstrated expertise in his specialty of consumer credit, as indicated by his numerous legal publications on the subject as well as prestigious professional positions. Rigid adherence to the education requirement would mean in this case that a 61 year-old man would have to go back to law school after 33 years of practice and two years of Minnesota residency. Petitioner Schober has demonstrated hardship and other compelling reasons of the type contemplated by Rule IB(6), Rules of the Supreme Court and of the State Board of Law Examiners for Admission to the Bar, and makes waiver of Rule II(A)(3) appropriate in this case.

Dolan's situation is more difficult to assess, as the original denial was based on the accreditation requirement, followed by an appeal to the supreme court, without a request for a waiver or an evidentiary hearing. Dolan was admitted to the bar in two other jurisdictions after successfully completing their bar examinations, was editor in chief of his school's law review, and has practiced for twelve years. Dolan's factual record, however, is less clear cut than the record presented by Schober. Dolan offers no explanation for his law school's lack of ABA-accreditation, but asserts that UWLA Law School "just cannot afford to be acc[r]edited by the ABA." Dolan has not presented any ABA review of UWLA stating the basis for non-accreditation or indicating the academic quality of the school. The Board also points out that there are several facts revealed in Dolan's application that warranty further scrutiny, including his voluntary filing of bankruptcy in 1980, his post traumatic stress syndrome following an auto accident, as well as his claim for workers' compensation based on job stress as deputy public defender. The Board has had no opportunity to investigate these issues because Dolan did not request a hearing. We decline to serve as finders of fact and evaluate this application on the limited facts before us. Instead, we remand the application of Petitioner Dolan to the Board of Law Examiners for a hearing and development of a complete factual record if he wishes to pursue the matter further. We retain jurisdiction to review the Board's recommendation in this case.

While this decision disposes of the case before us, we address briefly petitioner Dolan's arguments that equity and constitutional protections require he be admitted now to this state's bar.

Dolan argues that he was actually surprised by the accreditation requirement and that equity requires this court to waive the rule in his case. In *Hansen*, this court stated "[w]ere petitioner able to demonstrate that Minnesota's rules regarding graduation from an ABA-accredited law school come as a complete surprise to him, there might be some support for the argument that principles of fairness require us seriously to consider waiving [the rule]." *Hansen*, 275 N.W.2d at 798. In *Hansen*, the petitioner had been advised specifically of his law school's lack of ABA-accreditation as well as the possible effects of any attempt to practice in Minnesota, before he entered the non-accredited law school. There is no such evidence here. Dolan asserts that at the time he went to law school he did not know or consider Minnesota's bar admission requirements, nor was he aware of the accreditation status of his school. He also claims he was unaware of the accreditation requirement at the time he applied for admission to this state's bar.

If surprise were to constitute an equitable basis for waiver of Rule II, then the relevant period to test whether the petitioner understood the accreditation requirements was during law school. Dolan's claims that he was unaware of the accreditation status of his law school at the time are unsupported by evidence that the school obscured or withheld such information. Dolan's claim that he was surprised by Minnesota's admission standards at the time of his application is at best irrelevant. There is no equitable reason to waive application of Rule II(A)(3) for an attorney with

12 years of experience simply because he failed to read it. Constructive notice at the time of application is not unfair; under *Hansen,* actual notice at the time of attending law school may be required. We defer ruling on this issue until we receive the recommendation and full factual record of the Board.

■ Finally, Dolan contends constitutional analysis of the accreditation requirement under the privileges and immunities clause of the U.S. Constitution is required. Dolan frames the issue as "whether Minnesota's rule * * * meets a constitution [sic] test that their [sic] is a 'substantial reason' for discrimination between practicing lawyers who have not graduated from an ABA-approved law school and those that have." Requiring strict adherence to Rule II(A)(3) in a Rule IV application for admission, he argues, impairs an attorney's right to earn a living in this state, infringing a constitutional right under the privileges and immunities clause as enumerated in *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985).

The privileges and immunities clause requires that a state accord residents and non-residents equal treatment in activities bearing on the operation of the nation as a single entity. *Piper,* 470 U.S. at 279, 105 S.Ct. at 1275, (citing *Baldwin v. Fish & Game Comm'n of Montana,* 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354 (1978)). While *Piper* concluded the practice of law falls within the ambit of this clause, *Piper* has no further applicability to this case. Minnesota's requirement that applicants for admission to the bar graduate from an ABA-accredited law school, does not discriminate between residents and non-residents. *Piper* explicitly recognizes that states may continue to regulate their bars, so long as residents and non-residents are subject to the same professional and personal qualification requirements. *Piper,* 470 U.S. at 284, n. 16, 105 S.Ct. at 1278 n. 16. What Dolan is actually raising is an equal protection claim, disputing the disparate treatment given to the class of practicing attorneys who did not graduate from ABA-approved law schools. Both equal protection and due process claims were fully considered by this court in *In re Hansen,* and need not be redecided differently here.

We therefore order that the petition of Milton Schober is granted, and that he be admitted to the Bar of Minnesota. We order that the application of Paul Dolan be remanded to the Board of Law Examiners for development of a complete factual record if he wishes to pursue the matter further.

It is so ordered.

POPOVICH, C.J., and YETKA and KEITH, JJ., specially concur.

POPOVICH, C.J. (concurring specially).

I concur with the results reached by the majority granting the petition of Milton Welsh Schober and remanding the petition of Paul Dolan to the Board of Law Examiners. In my opinion the remand should be limited to a review of Dolan's character and fitness only, and not the purpose of evaluating whether the University of West Los Angeles School of Law might or might not be eligible for ABA accreditation or the reason it never applied.

Dolan passed the California bar examination in 1977, Hawaii in 1984; was duly admitted to the bars of California, Hawaii, Hawaii Federal Court and the United States Supreme Court; and has had over 12 years of extensive legal practice. This should be sufficient for a waiver of graduation from an ABA-accredited law school. If 33 years of practice is sufficient for Schober to be admitted to the Minnesota bar, even though he is not a graduate of an ABA-accredited institution, should not a lesser period be sufficient to qualify Dolan or others? It seems to me 10 years of active successful legal practice is a realistic period to qualify for a waiver of the Minnesota ABA graduation requirement. Once we waive the requirements for Schober, fairness and equity would require a waiver for those who have practiced a lesser period of time.

**560**

I agree with the dissents of Justices Yetka and Otis in *In re Hansen,* 275 N.W.2d 790, 799–800 (Minn.1978), and of Justices Yetka, Simonett and Otis in *In re Busch,* 313 N.W.2d 419, 422 (Minn.1981), holding that the facts in each of those cases would have justified the waiver of the Minnesota requirement that an applicant for admission in Minnesota must graduate from an ABA-accredited law school. Subject to a character and fitness review, the factors relating to Dolan would justify the same waiver granted Schober.

YETKA, Justice.

I join in the special concurrence of the Chief Justice.

KEITH, Justice.

I agree with the special concurrence of Chief Justice POPOVICH.